*FILED*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION   2017 JUL 14  PM 4: 57


US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

ADVANCE MAGAZINE PUBLISHERS INC.
d/b/a CONDÉ NAST,

           Plaintiff,

v.

    Case No. 6: 17-CV-1301 -Or l· 4/GJK
    JURY TRIAL DEMANDED

POOJA ENTERPRISES, LLC d/b/a
ORLANDO'S GQ MENSWEAR and d/b/a GQ
MENSWEAR – ORLANDO,

           Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Advance Magazine Publishers Inc. d/b/a Condé Nast ("**Condé Nast**" or

"**Plaintiff**"), through its undersigned counsel, hereby files this complaint against defendant,

Pooja Enterprises, LLC ("**Pooja**" or "**Defendant**") and in support thereof, states as follows:

### THE PARTIES

1.    Plaintiff is a corporation organized and existing under the laws of the State of

New York, with an address of One World Trade Center, New York, New York 10007.

2.    Defendant is a limited liability company, organized and existing under the laws of

the State of Florida, with its principal place of business at 5625 W. Colonial Drive, Suite A,

Orlando, Florida 32808.  On information and belief, Defendant's members are Rajesh Harjani

and Deborah Harjani, both of whom are residents of the State of Florida.

### NATURE OF ACTION

4.    This is an action for trademark infringement, false designation of origin, and

unfair competition, and dilution under the Trademark Act of 1946, as amended (The Lanham

Act, 15 U.S.C. § 1051 *et seq.*), and related state causes of action based on Pooja's use of "GQ" in connection with Pooja's retail clothing store, "GQ Menswear," and related retail store services, in violation of Condé Nast's established rights in its federally registered marks and common law marks for related goods and services.

### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1331 (actions arising under Federal laws), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1367 (supplemental jurisdiction over the state causes of action), and 28 U.S.C. § 1332 (diversity jurisdiction where matter in controversy exceeds $75,000 and is between citizens of different states). Condé Nast seeks damages in excess of $75,000.00.

6.      This Court has personal jurisdiction over Pooja, because Pooja purposefully directed its activities at residents of Florida, and the litigation at issue results from injuries to Condé Nast that arise from or relate to those activities. GQ Menswear is located in Orlando, Florida.

7.      Venue properly lies in this Division under Middle District of Florida Local Rule 1.02, because Orange County has the greatest nexus with this cause. Pooja's principal place of business is in and the cause of action arose in Orange County.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

### CONDE NAST'S GQ MARK

9.      Condé Nast is the owner of common law and registered trademark rights in and to

the marks GQ and GQ STYLE and the stylized marks  and 

(collectively, the "**GQ Mark**") in the U.S. and throughout the world.

10.      Condé Nast has continuously used the GQ Mark in connection with its magazine *GQ* (the "**Magazine**") since at least as early as 1957. The Magazine is one of the nation's premier men's lifestyle magazines.

11.      Condé Nast also uses the GQ Mark in connection with its corresponding website, GQ.com (the "**Website**"). The Magazine and Website both cover the subject matter of fashion, entertaining, food, beverages, travel, and culture.

12.      In its Magazine and Website, and through its sponsored events throughout the U.S., Condé Nast promotes the goods and services of others using its GQ Mark.

13.      In addition to the Magazine and the Website, Condé Nast has expanded its use of the GQ Mark to other goods and services.

14.      By way of example, Condé Nast has collaborated with Gap and a number of other apparel brands and fashion designers to release a line of GQ-approved men's clothing, as shown below.

3



15.     Additionally, Condé Nast has licensed its GQ Mark to bars and restaurants in markets outside the U.S. and has sponsored bar and cocktail events within the U.S.

16.     Further, Condé Nast uses the GQ Mark in connection with barbershop services and grooming products.  Condé Nast advertises and sells on its Website a monthly grooming box, "GQ Grooming Box," which includes award-winning grooming products for men handpicked by *GQ* editors.



17. As a result of Condé Nast's longstanding and continuous use of the GQ Mark, the GQ Mark has acquired substantial goodwill.

18. Since its first use of the mark, Condé Nast has spent significant resources advertising, developing, and promoting the GQ Mark. The GQ Mark has become synonymous with the upscale lifestyle products, apparel, clothing, and services that are contained within the editorial pages and advertisements published in the Magazine and on the Website and promoted through events, contests, licensed merchandise, and gatherings. As a result, millions of consumers in the U.S. (including consumers in the state of Florida) and worldwide instantly associate men's clothing, fashion, apparel, and accessories with Condé Nast's distinctive and famous GQ Mark.

19. The GQ Mark has become well known in Florida, throughout the U.S., and abroad, as a symbol of Condé Nast's goods and services.

20. Thus, Condé Nast owns extensive common law trademark rights in the GQ Mark.

21. Additionally, Condé Nast is the owner of a number of trademark registrations issued by the U.S. Patent and Trademark Office, including, among others:

>    (a)    **Mark**: GQ
>
>    **U.S. Registration No.**: 1298799
>
>    **Filing Date**: November 16, 1983
>
>    **First Use**: June 1, 1957
>
>    **Use in Commerce**: June 1, 1957
>
>    **Registration Date**: October 2, 1984
>
>    **Register**: Principal

**Goods and Services covered**: "Men's Magazine Dealing with Fashion, Entertainment and Other Topics of General Interest" (International Class 16).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 1**. Condé Nast's registration is valid and subsisting and has become incontestable.

(b)     **Mark**: GQ

**U.S. Registration No.**: 3436617

**Filing Date**: June 9, 2006

**First Use**: August 1, 2007

**Use in Commerce**: August 1, 2007

**Registration Date**: May 27, 2008

**Register**: Principal

**Goods and Services covered**: "Promoting the goods and services of others by distribution and transmission of advertisements in the nature of audio, video, text messages and emails via wireless and mobile devices" (International Class 35); "Transmission of information through video and audio via digital networks and electronic communications networks" (International Class 38); and "Providing information about fashion via wireless mobile devices, satellite, cable and global computer networks" (International Class 45).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 2**. Condé Nast's registration is valid and subsisting and has become incontestable.

(c)    **Mark**: GQ

       **U.S. Registration No.**: 4642438

       **Filing Date**: October 24, 2013

       **First Use**: January 6, 2014

       **Use in Commerce**: January 6, 2014

       **Registration Date**: November 18, 2014

       **Register**: Principal

       **Goods and Services covered**: "Hair cutting; Hair cutting services; Hair salon services; Barber shop services; Barbering services" (International Class 44).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 3**. Condé Nast's registration is valid and subsisting.



(d)    **Mark**:

       **U.S. Registration No.**: 2956663

       **Filing Date**: December 18, 2003

       **First Use**: April 1, 2002

**Use in Commerce**: April 1, 2002

**Registration Date**: May 31, 2005

**Register**: Principal

**Goods and Services covered**: "Printed matter, namely general interest magazines" (International Class 16); "Providing an online general interest magazine featuring topics of interest to men, namely, humor-oriented writings, politics, humor, pictures, sports, music, health, fitness, fashion, books and movies" (International Class 41).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 4**. Condé Nast's registration is valid and subsisting.



(e)     **Mark**:

**U.S. Registration No.**: 1833829

**Filing Date**: August 20, 1993

**First Use**: 1983

**Use in Commerce**: 1983

**Registration Date**: May 3, 1994

**Register**: Principal

**Goods and Services covered**: "magazine dealing with fashion, entertainment, health, lifestyle and other topics of general interest, directed to men" (International Class 16).

8

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 5**. Condé Nast's registration is valid and subsisting and has become incontestable.

(f)      **Mark**: GQ LOUNGE

**U.S. Registration No.**: 2695465

**Filing Date**: May 6, 2002

**First Use**: February 1, 2001

**Use in Commerce**: February 1, 2002

**Registration Date**: March 11, 2003

**Register**: Principal

**Goods and Services covered**: "Nightclubs" (International Class 41).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 6**. Condé Nast's registration is valid and subsisting and has become incontestable.

(g)      **Mark**: GQ STYLE

**U.S. Registration No.**: 5007105

**Filing Date**: November 23, 2015

**First Use**: March 11, 2014

**Use in Commerce**: March 11, 2014

**Registration Date**: July 26, 2016

**Register**: Principal

**Goods and Services covered**: "Periodically published magazine featuring topics of interest to men" (International Class 16).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 7**. Condé Nast's registration is valid and subsisting.

(h)  **Mark**: GQ STYLE

**U.S. Registration No.**: 5196535

**Filing Date**: November 23, 2015

**First Use**: August 31, 2016

**Use in Commerce**: August 31, 2016

**Registration Date**: May 2, 2017

**Register**: Principal

**Goods and Services covered**: "Providing an online non-downloadable general interest magazine featuring topics of interest to men" (International Class 41); and "Providing information about fashion via digital networks" (International Class 45).

A copy of the record of registration taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the registration is attached hereto as **Exhibit 8**. Condé Nast's registration is valid and subsisting. Collectively, the marks in the registrations listed in (a)-(h) above shall be referred to herein as the **"Registered Marks."**

22.     Condé Nast is also the owner of several allowed U.S. trademark applications covering a wide range of goods and services, including:

(a)     **Mark**: GQ

**U.S. Application No.**: 86/107748

**Filing Date**: November 1, 2013

**Filing Basis**: 1(b) Intent-to-Use

**Notice of Allowance Date**: November 1, 2016

**Goods and Services covered**: "Online retail store, mail order, and retail store services, all featuring a wide variety of consumer goods of others" (International Class 35).

A copy of the record of application taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the application is attached hereto as **Exhibit 9**.



(b)     **Mark**:

**U.S. Application No.**: 86/347181

**Filing Date**: July 24, 2014

**Filing Basis**: 1(b) Intent-to-Use

**Notice of Allowance Date**: January 13, 2015

**Goods and Services covered**: "Men's apparel, namely, suits, blazers, sport coats, pants, shorts, and active wear, namely, sweatshirts and hoodies, bike shorts, athletic socks, tank tops, track suits, wind resistant jackets, sweatbands; shirts; dress shirts; t-shirts; under shirts; sweaters;

outerwear, namely, coats and jackets; underwear; swimwear; pajamas; loungewear; robes; footwear, namely, shoes, boots, sneakers, sandals, slippers, and flip-flops; fashion accessories, namely, neck ties, bow ties, pocket squares, belts, suspenders, gloves, and socks" (International Class 25).

A copy of the record of application taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the application is attached hereto as **Exhibit 10**.

(c)    **Mark:** 

**U.S. Application No.:** 86/468597

**Filing Date:** December 2, 2014

**Filing Basis:** 1(b) Intent-to-Use

**Notice of Allowance Date:** July 7, 2015

**Goods and Services covered:** "Brick and mortar and online retail store services featuring apparel, hats, shoes, hair care products, watches, fashion accessories, grooming products, electronics, sporting goods, outdoor adventure equipment and gear, and furnishings" (International Class 35).

A copy of the record of application taken from the TSDR electronic database of the U.S. Patent and Trademark Office, showing the current status and title of the application is attached hereto as **Exhibit 11**.

## POOJA'S INFRINGING USE OF THE GQ MARK

23.    Pooja operates a brick and mortar retail clothing store, "GQ Menswear" in Orlando, Florida, and is engaged in the marketing and sale of a wide variety of apparel, shoes, and accessories in commerce under the term "GQ Menswear."

24.    Pooja uses the term "GQ Menswear" in connection with marketing and providing its retail store services to citizens of Florida and other states, and advertises its retail store services to citizens of Florida and other states via the Internet.

25.    Furthermore, Pooja's activities have a substantial effect upon Condé Nast's interstate usage of its mark, good will, and sales.  The continued, unauthorized use of "GQ Menswear" by Pooja would subject the good will and reputation of Condé Nast to the hazards of Pooja's business.

26.    The dominant portion of "GQ Menswear" is "GQ," which is identical to the GQ Mark.

27.    Pooja maintains a Facebook page, promoting its retail store services under the term "GQ Menswear Orlando."  On its Facebook page, Pooja touts that GQ Menswear is "Orlando's newest urban fashion superstore—Home of the 2 For $100 Suit Sale- Also sell hats, denim, shirts, ties, jewelery [sic], big n tall – Mens, Womens, and Kids."

28.    In addition, Pooja uses a nearly identical replica of Condé Nast's graphic mark  on its signage outside of the brick and mortar store in Orlando.  This use of "GQ" intentionally seeks to unfairly capitalize on the fame, reputation, and goodwill created by Condé Nast and its GQ Mark.  The storefront of the GQ Menswear store on May 14, 2017 appeared as follows:



29.     Pooja is using Condé Nast's GQ Mark without Condé Nast's authorization.

30.     On information and belief, Pooja began providing retail clothing store services under the term "GQ Menswear" within the last few years.

31.     Pooja is using "GQ" in U.S. commerce in connection with retail store services featuring men's apparel, including suits, hats, and shoes.  These services are closely related to the goods and services being offered by Condé Nast under its pre-existing GQ Mark.

32.     As discussed in paragraph 14, Condé Nast uses its GQ Mark to indicate its approval of a line of men's clothing manufactured by other apparel brands and fashion designers.  Such use is similar to Pooja's use of "GQ" in promoting and selling men's apparel manufactured by apparel brands at its retail store.  Additionally, retail store services featuring men's apparel are within Condé Nast's natural zone of business expansion.

33.     Furthermore, Condé Nast intends to expand into the retail store services market, as evidenced by its allowed trademark application no. 86/107748 and application no. 86/468597, filed on November 1, 2013 and December 2, 2014 respectively.

34.     At a minimum, Pooja's target customers overlap with Condé Nast's target customers—men seeking fashionable clothing.

35.     Pooja's services rendered under the term "GQ Menswear" are overlapping and/or closely related to Condé Nast's goods and services rendered under its GQ Mark.

36.     "GQ Menswear" so resembles Condé Nast's GQ Mark as to be likely, when used on or in connection with the services identified above, to cause confusion, or to cause mistake, or to deceive.

37.     Pooja's use of a nearly identical mark for services closely related to Condé Nast's goods and services offered under its GQ Mark is without authority or license from Condé Nast and creates a likelihood of confusion, deception, and mistake.

38.     Condé Nast's customers, Pooja's customers, and the general public are likely to be misled into believing that Pooja's services provided under the term "GQ Menswear" are provided, sponsored, or approved by Condé Nast.

39.     Pooja has infringed Condé Nast's GQ Mark by various acts, including, without limitation, the advertising, promotion, and provision of retail store services under the term "GQ Menswear."

40.     On April 7, 2017, counsel for Condé Nast sent Pooja a letter, demanding that it cease and desist from all use of the GQ Mark, including all signage, marketing, promotional, and other printed materials for the GQ Menswear store, as well as all social media sites promoting the store.

41.     Pooja has failed to comply with Condé Nast's demands.

42.     Therefore, Pooja's use of "GQ" in connection with Pooja's store and services has been made notwithstanding Condé Nast's well-known and prior established rights in the GQ Mark and with both actual and constructive notice of Condé Nast's Registered Marks under 15 U.S.C. § 1072.

43.     Pooja's continued use of "GQ" constitutes malicious, willful, fraudulent and deliberate infringement.

44.     Pooja's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Condé Nast's business, reputation, and good will. Condé Nast has no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I –
### FEDERAL TRADEMARK INFRINGEMENT
### UNDER LANHAM ACT § 32(1)

45.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44 of this Complaint as if fully set forth herein.

46.     Condé Nast is the owner of valid Registered Marks, as described in paragraph 21 above.

47.     Pooja's use of Condé Nast's Registered Marks and colorable imitations thereof in connection with the advertising and provision of its retail store services in commerce is likely to cause confusion, or to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48.     Pooja's use of the Registered Marks and colorable imitations thereof constitutes willful trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Condé Nast to an injunction, treble its damages, and Pooja's profits made from its infringing use of the GQ Mark, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

49.     Pooja's intentional, deliberate, and willful use of the GQ Mark and colorable limitations thereof with knowledge of Condé Nast's rights in the Registered Marks constitutes a willful violation of 15 U.S.C. § 1114(1) and renders this case exceptional, entitling Condé Nast to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II -
## FALSE DESCRIPTION AND REPRESENTATION
## OF ORIGIN, SPONSORSHIP, OR APPROVAL AND UNFAIR
## COMPETITION UNDER LANHAM ACT § 43(A)

50.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44 of this Complaint as if fully set forth herein.

51.     Condé Nast owns valid common law trademark rights in the GQ Mark.

52.     Pooja's use of the term "GQ Menswear" and the logo  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Pooja with Condé Nast, and as to the origin, sponsorship or approval of Pooja's services by Condé Nast.  Additionally, the public is likely to believe that Pooja's services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with Condé Nast, all to Condé Nast's irreparable harm and in violation of 15 U.S.C. § 1125(a).

53.     Pooja is knowingly infringing the GQ Mark in violation of the common law trademark rights of Condé Nast.

54.     The use by Pooja of "GQ Menswear" and  as described above, is likely to cause confusion as to the source of Pooja's services and constitutes a false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Condé Nast to an injunction, treble its damages, and Pooja's profits made from their infringing use of the GQ Mark, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

55.     Pooja's intentional, deliberate, and willful use of "GQ Menswear" and  with knowledge of Condé Nast's common law trademark rights in the GQ Mark, constitutes a willful

violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III –
## DILUTION UNDER LANHAM ACT § 43(C)

56.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44 of this Complaint as if fully set forth herein.

57.     The GQ Mark is a distinctive and famous mark within the meaning of 15 U.S.C. § 1125(c) by virtue of its inherent and acquired distinctiveness; the long duration and wide extent of the GQ Mark's use; the long duration, wide extent, and wide geographic reach of advertising and publicity of the mark; the large volume and wide geographic extent of sales of goods and services offered under the mark; the high degree of actual recognition of the mark; and the longstanding federal registrations of the mark.

58.     Pooja only recently adopted "GQ", well after the GQ Mark became famous.

59.     The dominant portion of "GQ Menswear" is "GQ," which is identical to the GQ Mark.

60.     Condé Nast's design mark, , and the logo used by Pooja are nearly identical.

61.     Pooja uses GQ in commerce. Such use is commercial in nature.

62.     Pooja's use of GQ in connection with its store and associated services has caused, or is likely to cause, dilution of Condé Nast's GQ Mark. It is likely that the ordinary consuming public of the U.S. will make an association arising from the similarity of the marks that impairs the distinctiveness of the GQ Mark.

63.     Pooja's use of the GQ Mark and marks incorporating GQ constitutes dilution under 15 U.S.C. § 1125(c), and Condé Nast is entitled to an injunction prohibiting such further use.

64.     Pooja willfully intended to trade on the recognition of Condé Nast's famous mark, entitling Condé Nast to treble its damages and Pooja's profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

65.     Pooja's willful conduct renders this case exceptional, entitling Condé Nast to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT IV –
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

66.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44 of this Complaint as if fully set forth herein.

67.     Condé Nast first adopted and used the GQ Mark as a means of establishing good will and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

68.     The GQ Mark is a valid and protectable mark by virtue of its association with such goods and services and Condé Nast's Federal Registrations.

69.     Pooja has commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

70.     As a result, use of Pooja's mark at the same time as Condé Nast's GQ Mark is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

71.     Pooja's use of Condé Nast's GQ Mark is without the consent of Condé Nast.

72.     Pooja has acted with the knowledge of Condé Nast's GQ Mark, and with the intent to cause confusion and/or trade on Condé Nast's reputation and good will.

73.     The use by Pooja of the GQ Mark and marks incorporating GQ to identify its services, as described above, constitutes infringement of Condé Nast's rights in its mark pursuant to the common law of the State of Florida, for which infringement Condé Nast is entitled to all remedies available to it under the common law of the State of Florida.

**COUNT V –**
**FLORIDA TRADEMARK AND SERVICE MARK DILUTION**

74.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44 of this Complaint as if fully set forth herein.

75.     The GQ Mark is a distinctive and famous mark in the State of Florida within the meaning of Fla. Stat. § 495.151 by virtue of the high degree of inherent and acquired distinctiveness of the mark in this State; the long duration and wide extent of use of the mark in connection with the goods and services with which the mark is used; the long duration and wide extent of advertising and publicity of the mark in this State; the wide geographic extent of the trading area in which the mark is used; the high degree of recognition of the mark in this State in Condé Nast and Pooja's channels of trade; and the longstanding federal registrations of the GQ Mark.

76.     Condé Nast has used its mark extensively throughout this State and this District for over fifty (50) years.

77.     Pooja only recently adopted "GQ", well after the GQ Mark became famous.

78.     The dominant portion of "GQ Menswear" is "GQ," which is identical to the GQ Mark.

79.     Condé Nast's design mark, , and the logo used by Pooja are nearly identical.

80.     Pooja uses GQ in commerce.  Such use is commercial in nature.

81.     Pooja's use of the GQ Mark in connection with its store and associated services has caused, or is likely to cause, dilution of Condé Nast's GQ Mark.  It is likely that the ordinary consuming public in Florida and the Orlando area will make an association arising from the similarity of the marks that impairs the distinctiveness of the GQ Mark.

82.     Due to Pooja's actions, Condé Nast is entitled to injunctive relief throughout this State and the Orlando area.

## COUNT VI –
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

83.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44, 46 to 49, 51 to 55, and 57 to 65 of this Complaint as if fully set forth herein.

84.     Pooja's violations of the Lanham Act, including trademark infringement, unfair competition, and dilution, constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204, entitling Condé Nast to all remedies available, including damages and reasonable attorneys' fees and costs.

## COUNT VII –
## FLORIDA UNFAIR COMPETITION

85.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 44, 46 to 49, 51 to 55, 57 to 65, 67 to 73, 75 to 82, and 84 of this Complaint as if fully set forth herein.

86.     Pooja's actions, as described above, constitute unfair competition under the common law of the State of Florida, in that Pooja's actions constitute Federal Trademark

21

Infringement under the Lanham Act, False Description and Representation of Origin, Sponsorship, or Approval and Unfair Competition under the Lanham Act, Dilution under the Lanham Act, Dilution under Florida statutory law, Florida common law trademark infringement and violation of the Florida Deceptive and Unfair Trade Practices Act, entitling Condé Nast to all remedies available under Florida law for such unfair competition.

87.     Pooja's actions are likely to cause consumers to believe that Pooja's services originate from the same source as, or are sponsored or approved by Condé Nast, or that there is an association, affiliation, or connection between Pooja and Condé Nast.

88.     Condé Nast has been damaged by Pooja's actions.

89.     Condé Nast seeks monetary damages for Pooja's actions.

## PRAYER FOR RELIEF

WHEREFORE, Condé Nast respectfully demands a jury trial, and prays for the following relief against Pooja:

1.     That Pooja and its officers, directors, agents, servants, employees, and all persons in active concert and participation with them, be permanently enjoined from using the mark GQ, or any other mark that is similar in appearance to Condé Nast's GQ Mark as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in social media; or in any other manner in connection with business, products, or services within the U.S.

2.     That Pooja be ordered to deliver up for destruction all products, literature, signs, labels, tags, prints, packages, wrappers, containers, fabrics, advertising materials, stationery, and any other items in Pooja's possession or control that bear the mark GQ, or any other

mark that is similar to Condé Nast's GQ Mark, and that Pooja be ordered to deliver up for destruction all plates, molds, matrices, masters, and other means of producing or applying the prohibited mark.

3.     That Pooja be ordered to file with the Court and serve on Condé Nast, within 30 days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which Pooja has complied with the injunction.

4.     That in accordance with the Lanham Act and Florida statutory and common law, Condé Nast be awarded treble its damages and Pooja's profits, increased subject to the principles of equity, compensatory damages, pre-judgment interest, and Condé Nast's costs of suit and reasonable attorneys' fees.

5.     That Condé Nast have such other and further relief, including without limitation equitable relief, as the Court deems just and proper.

Dated:  July 13, 2017

Respectfully submitted,

ADAMS AND REESE LLP

Eric J. Partlow
Trial Counsel
Florida Bar No. 556531
eric.partlow@arlaw.com

Melissa S. Rizzo
Florida Bar No. 064491
melissa.rizzo@arlaw.com

101 E. Kennedy Blvd., Suite 4000
Tampa, Florida 33602
(813) 402-2880 (Telephone)
(813) 402-2887 (Facsimile)
*Attorneys for Plaintiff*